UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY REAGH<br>3313 S. Jasmine Ave.<br>Akron, Ohio 44319<br><br>*On behalf of herself and all others*<br>*similarly situated,*<br><br>Plaintiff,<br><br>*v.*<br><br>GIESEN MANAGEMENT<br>ASSOCIATES, LLC<br>c/o Statutory Agent David Giesen<br>3020 N. Wooster Avenue<br>Dover, OH 44622<br><br>*and*<br><br>DAVID GIESEN<br>3020 N. Wooster Avenue<br>Dover, OH 44622<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:22-CV-266<br><br>JUDGE SARA LIOI<br><br>**PLAINTIFF'S FIRST AMENDED**<br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>(Jury Demand Endorse Herein) |

Plaintiff Courtney Reagh, by and through counsel, for her First Amended Class and

Collective Action Complaint against Defendants Giesen Management Associates, LLC

(hereinafter also referred to as "Giesen Management Associates"), and David Giesen (hereinafter

also collectively referred to as "Defendants"), states and alleges the following:

## INTRODUCTION

1.      Plaintiff brings this case to challenge the policies and practices of Defendants

Giesen Management Associates and David Giesen that violate the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201-219, as well as the statutes and common law of the State of Ohio.

2.      Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of [herself] or themselves and other employees similarly situated" (the "FLSA Collective").

3.      Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons who assert factually-related claims under the wage-and-hour statutes and common law of the State of Ohio (the "Ohio Class").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5.      This Court has supplemental jurisdiction over Plaintiff's claims under the statutes and common law of the State of Ohio because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

7.      At all times relevant, Plaintiff Courtney Reagh was a citizen of the United States and a resident of Summit County, Ohio.

8.      Defendant Giesen Management Associates is a Colorado[1] for-profit limited liability company[2] with its principal place of business at 5303 S. Franklin Cir., Greenwood

---

[1] *See* https://www.linkedin.com/company/giesen-management-associates-llc (last accessed May 9, 2022).
[2] https://businesssearch.ohiosos.gov?=businessDetails/3928870 (last accessed May 9, 2022).

Village, Colorado.[3] According to records maintained by the Ohio Secretary of State, Defendant

Giesen Management Associates' Ohio statutory agent for service of process is David Giesen,

3020 N. Wooster Avenue, Dover, OH 44622.[4]

## FACTUAL ALLEGATIONS

### Defendants' Business

9.      Giesen Management Associates is a "[r]estaurant management group with Slim

Chickens, Dunkin', Arby's, and Freddy's Frozen Custard and Steakburgers brands."[5]

10.      Defendants utilize hourly employees, including Plaintiff and other members of the

FLSA Collective and Ohio Class, in furtherance of their business purpose of operating their

restaurant franchise locations.

### Defendants' Statuses as Employers

11.      At all times relevant, Defendants were employers within the meaning of the

FLSA, 29 U.S.C. § 203(d) and O.R.C. Chapter 4111 and employed non-exempt hourly

employees, including Plaintiff and other members of the FLSA Collective and Ohio Class.

12.      At all times relevant, Defendants were an enterprise within the meaning of 29

U.S.C. § 203(r).

13.      At all times relevant, Defendants were an enterprise engaged in commerce or in

the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

14.      Defendants operate and control an enterprise engaged in commerce, with annual

gross volume of business exceeding $500,000.00.

---

[3] https://www.federalpay.org/paycheck-protection-program/giesen-management-associates-llc-greenwood-village-co (last accessed May 9, 2022).
[4] https://businesssearch.ohiosos.gov?=businessDetails/3928870 (last accessed May 9, 2022).
[5] *See id.*

3

15.     Defendant David Giesen is an employer pursuant to 29 U.S.C. § 203(d) in that he is a "person [who] act[ed] directly or indirectly in the interest of an employer," Defendant Giesen Management Associates, "in relation to employees," including Plaintiff and other members of the FLSA Collective and Ohio Class. Defendant David Giesen is also an employer pursuant to O.R.C. Chapter 4111 and Ohio Const. Article II, Section 34a, and, as further explained with documentary evidence below, had operational control over significant aspects of Giesen Management Associates' day-to-day functions, including but not limited to the scheduling of and compensation of employees.

16.     Defendants were each employers of Plaintiff and other members of the FLSA Collective and Ohio Class as each Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment; determined employees' rates and methods of payment; and maintained or were required to maintain records, including employment records.

### Defendants' Statuses as a "Joint Employer," "Single Employer," and "Single Enterprise" as to each Ohio Restaurant Brand Location

17.     The FLSA and Ohio law[6] "contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA."[7] "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."[8]

---

[6] *See Hurt v. Commerce Energy, Inc*., N.D.Ohio No. 1:12-CV-758, 2017 U.S. Dist. LEXIS 128850, at *4, fn. 9
(Aug. 14, 2017) ("Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum
wage and overtime compensation provisions.") (quoting *Heard v. Nielson*, No. 1:16-CV-1002, 2017 U.S. Dist.
LEXIS 85057, 2017 WL 2426683, at *2 (S.D. Ohio June 2, 2017).
[7] *Dole v. Elliot Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991) (citations omitted).
[8] *Id.* (citations omitted).

18.     Defendants are each employers of Plaintiff and other members of the FLSA Collective and Ohio Class pursuant to 29 C.F.R. § 791.2.

19.     As noted above, and at all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of Defendants' restaurant franchise locations – directly under Giesen Management Associates (which is a company entity owned and operated by Defendant David Giesen) – including Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and/or Steakburgers brand locations in Ohio. Defendants were individually and jointly "employers" within the meaning of the FLSA and Ohio law as to each Ohio restaurant franchise location, regardless of brand name.

20.     This is not a case where a person or holding company owns multiple separate limited liability companies, corporations or other fictitious business entities that have separate legal status that a plaintiff is attempting to loop into a single employer for coverage purposes. **Instead, here, Giesen Management Associates is the only entity that legally owns and operates Defendants' Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and Steakburgers brand locations in Ohio. There are no other separate legal entities – each of these restaurant locations is operated under, by, and through the Giesen Management Associates legal entity, the owner and operator of which is the named Defendant David Giesen.**

21.     At all times relevant, each of Defendants' restaurant franchise locations are wholly owned operations of Giesen Management Associates, the owner/proprietor of which is the named Defendant David Giesen.

22.     Defendants apply or cause to be applied substantially the same employment policies, practices, and procedures to all Giesen Management Associates' / David Giessen's hourly employees at all of their Ohio locations, including policies, practices, and procedures relating to payment of overtime wages. Defendants jointly maintained control, oversight, and direction over Defendants' hourly employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, and other practices.

23.     Defendant David Giesen is an owner and operator of Defendant Giesen Management Associates for each of Giesen Management Associates' Ohio restaurant franchise locations. Defendant David Giesen exercises daily operational control over Defendant Giesen Management Associates' business operations, including making decisions over the hiring and firing of employees, scheduling employees for work, establishing payroll policies and procedures, establishing rates of pay for employees, and personally issuing payroll and paychecks for hours worked to employees, for each of Giesen Management Associates' Ohio restaurant franchise locations, regardless of brand.

24.     Both Defendant David Giesen and Defendant Giesen Management Associates issued paychecks to Plaintiff and other members of the FLSA Collective and Ohio Class, electronically and personally. By way of example, on January 22, 2022 Defendant David Giesen and Defendant Giesen Management Associates issued a check to Plaintiff Courtney Reagh that was ***personally signed*** by Defendant David Giesen from the Giesen Management Associates entity as provided in the image below.



25.    On or about February 3, 2022, again by way of example, Defendant David Giesen and Defendant Giesen Management Associates issued a check to Plaintiff Courtney Reagh that was personally signed by Defendant David Giesen, as provided in the image below.

---

[9] Sensitive financial and tracking information has been redacted. The unredacted version can be provided to Defendants or the Court upon request.



26.     As noted above, Defendants were each employers of Plaintiff and other members of the FLSA Collective and Ohio Class as each Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment;

---

[10] Sensitive financial and tracking information has been redacted. The unredacted version can be provided to Defendants or the Court upon request.

determined employees' rates and methods of payment; and maintained or were required to maintain records, including employment records.

27.     Defendant David Giesen fulfills the role of head corporate officer over Giesen Management Associates at all brand locations, leading corporate functions relating to wage and hour matters.

28.     Defendants list "Giesen Management Associates" as a "Sole Proprietorship" founded in 2016 on its public company LinkedIn page. Giesen Management Associates' LinkedIn page specifically describes itself as a "[r]estaurant management group with Slim Chickens, Dunkin', Arby's, and Freddy's Frozen Custard and Steakburgers brands." Giesen Management Associates' LinkedIn page specifically includes images of Slim Chickens, Arby's, and Freddy's Frozen Custard and Steakburgers locations that Defendants jointly own and operate. [11]  A screenshot of this publicly available LinkedIn page is provided below.

---

[11] *See* https://www.linkedin.com/company/giesen-management-associates-llc (last accessed May 9, 2022).



29.     Defendant David Giesen is the owner operating Giesen Management Associates as represented publicly to its employees, its customers, and the general public.

30.     Not only did Defendant David Giesen establish payroll policies and procedures, and personally issued paychecks to employees, Defendant David Giesen also personally was involved with scheduling employees for work and determining attendance requirements. For example, on January 21, 2020, Defendant's district manager Melissa Burbank instructed Plaintiff Reagh that Defendant David Giesen instructed her to work until February 6th or 9th, 2022. As provided in the following text message conversation:



31.     Defendants share centralized control of labor relations and personnel over all

franchise locations, regardless of the brand name. Defendant David Giesen personally manages,

_____

[12] Sensitive security information has been redacted. The unredacted version can be provided to
Defendants or the Court upon request.

runs, and operates Giesen Management Associates restaurant locations through Giesen
Management Associates which, again, is an entity owned and operated personally by Defendant
David Giesen.

32.     Defendants share common management, common directors and/or boards. Again,
Defendant David Giesen personally manages, runs, and operates Giesen Management Associates
restaurant locations through Giesen Management Associates which, again, is an entity owned
and operated personally by Defendant David Giesen.

33.     In an article posted on www.1851franchise.com,[13] Defendant David Giesen
represents his ownership of and operational control over the franchise company Giesen
Management Associates. As noted in the article, Defendant David Giesen states that "I currently
own 16 restaurants under the Arby's and Freddy's franchise brands, and this Slim Chickens in
Streetsboro will be my 17th."

34.     Defendant David Giesen is the "top man" at Giesen Management Associates, and
the company functions for his profit.[14] Thus, Defendant David Giesen is personally liable.

35.     At all times relevant, Plaintiff and other members of the FLSA Collective and
Ohio Class were "employees" of Defendants, who are joint employers.

36.     Defendants are an integrated company that share customers, equipment, systems,
processes, employees, and other assets. Again, by way of example, the processing of payroll and

---

[13] https://1851franchise.com/the-great-franchisee-david-giesen-slim-chickens-streetsboro-ohio-2714593 (last accessed May 8, 2022).

[14] *See Waters v. Pizza to You, LLC*, S.D.Ohio No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 222622, at *5 (Nov. 18, 2021)  ("In the Sixth Circuit, being the 'top man' at a corporation that functions for an individual's profit is sufficient to impose FLSA liability. This is true even when an individual employer alleges that other, lower members of management made day-to-day operational decisions.") (citing *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 966, (6th Cir. 1991) (additional citations omitted).

paying of time worked is centrally maintained by Giesen Management Associates, regardless of franchise brand. *See* paragraphs 24 and 25 above, and 56, 57, 71, and 72 below.

37.    Defendants jointly maintained control, oversight, and direction over Plaintiff and other members of the FLSA Collective and Ohio Class as to all franchise locations, including the promulgation and enforcement of policies affecting the payment of wages for compensation.

38.    Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of Defendants' restaurant franchising business.   Defendants jointly operate Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and Steakburgers brands. While the names of the brands on the buildings may be different, they are all managed, owned, and operated directly under the Giesen Management Associates company, which again functions for the profit of owner Defendant David Giesen.

39.    As belabored above, Defendants share common management between restaurant franchise locations. Defendant David Giesen, who owns "16 restaurants under the Arby's and Freddy's franchise brands, and this Slim Chickens in Streetsboro will [be his] 17th," is personally and directly involved in the management of Defendants' franchise locations, including paying employees insufficient wages.

40.    As noted above, according to records maintained by the Ohio Secretary of State, Defendant Giesen Management Associates' Ohio statutory agent for service of process is David Giesen, 3020 N. Wooster Avenue, Dover, OH 44622.[15] 3020 N. Wooster Avenue, Dover, OH 44622 is one of Defendant David Giesen's Ohio franchise locations operating directly under the

---

[15] https://businesssearch.ohiosos.gov?=businessDetails/3928870 (last accessed May 9, 2022).

Giesen Management Associates entity, here, a Freddy's Frozen Custard & Steakburgers franchise, [16] [17] as seen in the screenshot from Google Maps below:



41.     Defendants share operational control over significant aspects of the day-to-day functions of Plaintiff and other members of the FLSA Collective and Ohio Class, including supervising and controlling Plaintiff's and other members of the FLSA Collective's and the Ohio Class's work schedules and conditions of employment between restaurant franchise locations. As noted above, each one of these Ohio franchise locations share the same legal entity of ownership and control – Giesen Management Associates – and share the same statutory agent for service of process – David Giesen – who is also an owner and operator of all franchise locations. All Ohio locations share the very same location for service of process, 3020 N. Wooster Avenue, Dover, OH 44622.[18]

---

[16] https://freddysusa.com/locations/?type=findmyfreddys&address=44622&distance=25 (last accessed May 9, 2022).
[17] https://goo.gl/maps/bbegnZ3JsxujdLGi6 (last accessed May 9, 2022).
[18] https://businesssearch.ohiosos.gov?=businessDetails/3928870 (last accessed May 9, 2022).

42.     Defendants share common personnel management and human resources personnel between restaurant franchise locations. Again, Defendant David Giesen, who owns "16 restaurants under the Arby's and Freddy's franchise brands, and this Slim Chickens in Streetsboro will [be his] 17th," is personally involved in the management of Defendants' franchise locations. As outlined above, Defendant David Giesen is personally involved with scheduling employees for work across restaurant locations. For example, on January 21, 2020, Defendant's supervising manager Melissa Burbank instructed Plaintiff Reagh that Defendant David Giesen wanted her to work until February 6th or 9th, 2022. *See* paragraph 30 above.

43.     Likewise, Defendants shared authority to hire, fire and discipline employees, including Plaintiff and other members of the FLSA Collective and Ohio Class, between restaurant franchise locations. As noted above, not only did Defendant David Giesen establish payroll policies and procedures, establish pay practices for employees, and directly issue paychecks and payroll to employees, Defendant David Giesen also personally was involved with scheduling employees for work.

44.     Defendants shared authority to set rates and methods of compensation of employees, including Plaintiff and other members of the FLSA Collective and Ohio Class, between restaurant franchise locations.

45.     Defendants shared control and maintenance of employment records, including payroll and timekeeping records, between restaurant franchise locations. Defendants utilized Giesen Management Associates' bank accounts, including the JPMorgan Chase Bank account in the name of **Giesen Management Associates, to make payments to employees at all of their Ohio franchise locations, regardless of brand.** Giesen Management Associates is the legal entity that owns these bank accounts and issues payroll across all franchise locations, albeit

whether the employee works at Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and Steakburgers locations. *See* paragraph 25  above.

46.     As above, Defendants shared financial control over all franchise locations, albeit whether an employee works at a Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and Steakburgers location. Again, Defendants' bank accounts, payroll accounts, and other financial accounts are maintained and operated under the Giesen Management Associates legal entity.

47.     Defendants do not operate or own separate corporations, limited liability companies, or other business entities in furtherance of their operation of the franchise locations. These franchise locations are operated and managed directly by Defendant David Giesen and Defendant Giesen Management Associates. By way of example, as noted above, Defendants utilized Giesen Management Associates bank accounts, including the JPMorgan Chase Bank account in the name of Giesen Management Associates, and/or other Giesen Management Associates accounts, to make wage payments to employees at all of their Ohio franchise locations.

48.     Defendants have shared and mutually benefitted from the work and services performed by Plaintiff and other members of the FLSA Collective and Ohio Class between restaurant franchise locations. Defendant David Giesen, through Defendant Giesen Management Associates, runs all of the locations.

49.     Between restaurant franchise locations, Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiff and other members of the FLSA Collective and Ohio Class.

50.     Whether or not the restaurant franchise locations owned and operated by David Giesen, through Defendant Giesen Management Associates, are involved in the time editing and deduction scheme to deprive their Ohio hourly workers of overtime wages as outlined in this Amended Complaint can be directly derived from the timekeeping and payroll records and documents directly in Defendant David Giesen's and Defendant Giesen Management Associates' possessions. Defendant David Giesen's and Defendant Giesen Management Associates use common systems, *e.g.* same bank account, timekeeping and payroll providers.

51.     Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and other members of the FLSA Collective and Ohio Class between restaurant franchise locations.

52.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose between restaurant franchise locations through the Defendant Giesen Management Associates legal entity.

53.     Between restaurant franchise locations, Defendants provide services and products to customers by using a set formula when conducting business.

54.     Part of that set formula is the unlawful deprivation of wages to their employees as outlined in this Amended Complaint.

55.     By way of example, as further outlined below, Defendants regularly automatically deduct from employee hours worked each shift for a purported "break," usually in the amount of 15 minutes. Defendants automatically deduct 15 minutes, or other similar amounts, whether or not a break is actually taken. This practice occurred across Defendants' restaurant locations.

56.     Only by way of example, Defendants' time editing software demonstrates that this 15-minute break deduction occurred at the Avon location. As provided in the following picture from Defendants' employee timecard / time editing software:



As provided in the above image, while the worker worked, for example, from 4:16 p.m. to 10:43 p.m. on January 26, 2022 at the "14503 Avon" location, or 6.45 hours total, Defendants implemented a 15-minute deduction (*see* column labeled "Unpaid Breaks," detailing a 0.25-hour deduction), and instead paid for 6.20 hours, or 6.45 hours minus the 0.25 break deduction.

57.     In addition, only by way of example, Defendants' time editing software demonstrates that this 15-minute break deduction occurred at the Streetsboro location. As provided in the following picture from Defendants' employee timecard / time editing software:



As provided in the above image, while the worker worked, for example, from 10:51 a.m. to 5:03 p.m. on January 21, 2022 at the "14501 Streetsboro" location, or 6.20 hours total, Defendants implemented a 15-minute deduction (*see* column labeled "Breaks," detailing a .25 hour /15-minute deduction), and instead paid for 5.95 hours, or 6.20 hours minus the 15-minute break deduction.

58.    Moreover, while the names on the buildings of the franchises may be different, Defendant David Giesen and Defendant Giesen Management Associates have collectively engaged in a time editing and deduction scheme to deprive their Ohio hourly workers of overtime wages. This scheme, as demonstrated by the records above, applies to all of Defendant David Giesen's and Defendant Giesen Management Associates' hourly workers in Ohio, again regardless of brand.

59.    Upon information and belief, it is not the corporate franchisor Slim Chickens, Dunkin', Arby's, and/or Freddy's Frozen Custard and Steakburgers entities that have created and enforced these overtime time editing and deduction schemes that have led to the non-payment of

wages to Ohio Giesen Management Associates employees. Instead, this scheme was created and enforced at the franchisee level by Defendant David Giesen and Defendant Giesen Management Associates across all franchise locations.

60.     As a result, each Defendant is responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA and Ohio law, and Defendants are a "single enterprise" or "single employer" for the purposes of the FLSA and Ohio law.

### Plaintiff's, the FLSA Collective's, and Ohio Class's Non-Exempt Employment Statuses with Defendants

61.     Plaintiff Courtney Reagh was employed by Defendants from approximately December 2021 to February 2022 as an hourly, non-exempt employee. Defendants classified Plaintiff as a non-exempt hourly employee, and paid Plaintiff at an hourly rate during her employment. Plaintiff was employed by Defendant as an hourly manager.

62.     At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees within the meaning of 29 U.S.C. § 203(e) and O.R.C. §§ 4111.01, *et seq.*

63.     At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

64.     Part of Plaintiff's and other members of the FLSA Collective's and the Ohio Class's job duties included regularly handling multiple goods and products that have been produced or moved in interstate commerce. Part of Plaintiff's and other members of the FLSA Collective's and the Ohio Class's job duties included handling products that were manufactured and/or distributed in interstate commerce that were necessary for Defendants' commercial purpose. Part of Plaintiff's and other members of the FLSA Collective's and the Ohio Class's job

duties included utilizing the internet, text messaging applications, and other instrumentalities of interstate commerce on a regular basis.

### Defendants' Failure to Pay for All Overtime Hours Worked to Plaintiff and Other Members of the FLSA Collective and Ohio Class as a Result of Defendants' Unlawful Practices and Policies

65.     The FLSA and Ohio law required Defendants to pay overtime compensation to employees at the rate of one and one-half times their regular rate for the hours Plaintiff and other members of the FLSA Collective and Ohio Class worked in excess of forty (40). 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

66.     Plaintiff and other members of the FLSA Collective and the Ohio Class frequently worked more than forty (40) hours in a single workweek.

### *Defendants' Time Editing Practices and Policies*

67.     Defendants failed to pay Plaintiff and other members of the FLSA Collective and the Ohio Class for all time worked while they were clocked in and working, including during workweeks when they worked more than forty (40) hours, as a result of Defendants' unlawful time editing practices and/or policies.

68.     Plaintiff's and other members of the FLSA Collective's and the Ohio Class's time worked was regularly edited by upper management, resulting in less time paid than time worked. As a result of Defendants time editing of compensable time worked, Plaintiff and other members of the FLSA Collective and the Ohio Class were not paid for all hours worked, including overtime hours worked. *See* 29 U.S.C. § 207.

69.     Plaintiff and other members of the FLSA Collective and the Ohio Class are required to clock into a time keeping system at the start of their legally compensable workday, and out at the end of their legally compensable workday. However, Plaintiff's and other

members of the FLSA Collective's and the Ohio Class's hours are instead paid based on modified, inaccurate and/or incomplete records submitted to payroll. These modified, inaccurate and/or incomplete records do not include compensable work performed for Defendants at the start, middle, and/or end of the legally compensable workday as a result of Defendants' time editing practices and/or policies.

70. Although Defendants suffered and permitted Plaintiff and other members of the FLSA Collective and the Ohio Class to work more than forty (40) hours per workweek, Defendants consistently failed to pay Plaintiff and other members of the FLSA Collective and the Ohio Class overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. *See* 29 C.F.R. § 785.11. Although hourly employees including Plaintiff and other members of the FLSA Collective and the Ohio Class regularly complete tasks that are required by Defendants, are performed for Defendants' benefit, and constitute part of their principal activities and/or are integral and indispensable to their principal activities, hourly employees are not paid for all the time spent performing these tasks as a result of Defendants' time editing practices and/or policies. As a result, Plaintiff and other members of the FLSA Collective and the Ohio Class were not properly paid for many of their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq*., and Ohio law, O.R.C. §§ 4111.03, 4111.10.

71. Only by way of example, the current records available demonstrate routine, consequential edits of time worked. As provided in the following picture from a report generated by Defendants' employee timecard / time editing software:



As provided in the above image:

- on January 18, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 4:31 PM to 4:46 PM;

- on January 19, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 11:45 PM to 12:00 PM;

- on January 20, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 3:50 PM to 4:05 PM; and

- on January 23, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 10:50 PM to 11:05 PM.

---

[19] Personal identification information for employees not currently involved in the litigation has been redacted. The unredacted version can be provided to Defendants or the Court upon request.

72.     In addition, as provided in another report generated by Defendants' employee timecard / time editing software:



- on January 26, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 1:15 PM to 1:30 PM;

- on January 28, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 11:15 AM to 11:30 AM;

- on January 30, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 12:15 PM to 12:30 PM;

- on January 20, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 6:27 PM to 6:42 PM;

24

- on January 22, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 5:50 PM to 6:05 PM; and

- on January 28, 2022, Defendants' district manager Melissa Fordenwall edited an hourly employee's time record and added a 15-minute break from 5:50 PM to 6:05 PM.

73.     Defendants' illegal pay practices were the result of systematic and company-wide policies originating at the upper management / executive level.

74.     Defendants' failure to compensate Plaintiff and other members of the FLSA Collective and the Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay – as a result of Defendants' time editing practices and/or policies – constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio law.

### Defendants' Unlawful "Break" Time Deduction Practices and Policies

75.     Defendants regularly automatically deduct from employee hours worked each shift for a purported "break," usually in the amount of 15 minutes, across franchise locations. Defendants automatically deduct 15 minutes, or other similar amounts, whether or not a break is actually taken.

76.     By way of example, as provided in the many examples in paragraph 56 above, while the worker worked, for example, from 4:16 p.m. to 10:43 p.m. on January 26, 2022 at the "14503 Avon" location, or 6.45 hours total, Defendants implemented a 15-minute deduction (*see* column labeled "Unpaid Breaks," detailing a 0.25-hour deduction), and instead paid for 6.20 hours, or 6.45 hours minus the 0.25 hour (15 minute) break deduction. As a second example, as provided in the example in paragraph 57 above, while the worker worked, for example, from 10:51 a.m. to 5:03 p.m. on January 21, 2022 at the "14501 Streetsboro" location, or 6.20 hours

total, Defendants implemented a 15-minute deduction (*see* column labeled "Breaks," detailing a 15-minute deduction), and instead paid for 5.95 hours, or 6.20 hours minus the 15-minute break deduction. Paragraphs 71 and 72 above further demonstrate these routine but unlawful 15-minute "break" deductions, which are a standard policy and practice of Defendants.

77. This systematic automatic "break" deduction policy and practice violates the FLSA and Ohio law in several ways.

78. First, and most consequentially, pursuant to the FLSA and Ohio law, when Plaintiff and other members of the FLSA Collective and the Ohio Class took or, as here where the breaks were automatically deducted, breaks of 19 minutes or less in duration the FLSA and Ohio law required them to be paid for this time. As provided for by 29 C.F.R. § 785.18:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. **They must be counted as hours worked.** Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (Emphasis added) (additional citation omitted).

79. Second, Defendants' automatic break deduction policies and practices, which result in the docking of compensable hours and pay, are a *per se* violation of the anti- time docking regulations of the FLSA. 29 C.F.R. § 785.1. Defendants' automatic break deduction policies and practices caused Defendants to violate the FLSA and the Department of Labor's regulations by docking compensable hours worked and pay, and thereby failing to pay for all hours suffered or permitted to work.

80. Third, Defendants automatically deducted the "breaks" from hourly employees' time worked despite the fact that Plaintiff and other members of the FLSA Collective and Ohio Class regularly did not receive and/or take bona fide meal periods. As provided for by the FLSA, 29 C.F.R. § 785.19:

26

Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. **The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.** For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating [and must be compensated for this time worked]. (Emphasis added) (additional citation omitted).

81. During the time that Plaintiff and other members of the FLSA Collective and Ohio Class had these automatic deductions applied they, among other things, attended to customers, accessed and interacted with the company computer system(s), and/or performed the duties they were required to perform during their shifts. The work Plaintiff and other members of the FLSA Collective and Ohio Class performed during these purported automatically deducted "breaks" was predominately for Defendants' benefit. Defendants' management employees and/or Plaintiff and other members of the FLSA Collective's and Ohio Class's supervisor(s) observed that Plaintiff and other members of the FLSA Collective and Ohio Class did not receive bona fide meal periods and/or performed work during these automatically added "breaks."

82. Plaintiff and other members of the FLSA Collective and Ohio Class were denied significant amounts of wages and compensation because of Defendants' failure to pay Plaintiff and other members of the FLSA Collective and Ohio Class for the unlawfully automatically added "breaks." Because Plaintiff and other members of the FLSA Collective and Ohio Class did not have a bona fide meal period under the wage and hour laws and attendant regulations, *see* 29 C.F.R. § 785.19, Defendants were not permitted to make the automatic deductions regardless of the amount of time deducted.

83. In summary, Defendants manually edited Plaintiff's and other similarly situated employees' time records to reflect that they took a "break" when no break was taken. Defendants

further did not compensate Plaintiff and other members of the FLSA Collective and Ohio Class for short breaks of 19 minutes or less during the workday regardless of the reason for the break. Finally, Defendants deducted for "breaks" when Plaintiff and other members of the FLSA Collective and Ohio Class were not completely relieved from their job duties in order to reduce labor costs and maximize profits.

84.     Defendants' failure to compensate Plaintiff and other members of the FLSA Collective and the Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay – as a result of Defendants' deductions for "breaks" whether or not the "breaks" were actually taken, deductions for "breaks" that were 19 minutes or less in duration, and deductions for "breaks" when workers were not completely relieved from their job duties – constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio law.

*Defendants' Straight Time for Overtime Practices and Policies*

85.     Instead of compensating Plaintiff and other members of the FLSA Collective and Ohio Class at one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek, during one or more workweeks, Defendants paid Plaintiff and other members of the FLSA Collective and Ohio Class their regular, straight time hourly rates for overtime hours worked.

86.     By way of example, as provided in paragraph 25 above, on February 3, 2022 Defendant David Giesen and Defendant Giesen Management Associates issued a check to Plaintiff Courtney Reagh that was signed by Defendant David Giesen for a two-week payroll period. As provided in the handwritten payroll deduction slip, Plaintiff Courtney Reagh worked 85.49 hours, or a minimum of 5.49 overtime hours during the two-week period. Instead of

paying Plaintiff Courtney Reagh overtime for the minimum of 5.49 overtime hours, Defendants – specifically Defendant Giesen Management Associates who issued the check, and Defendant David Giesen who personally owns and operates these franchises through Giesen Management Associates **and signed the check** – paid Plaintiff Courtney Reagh a straight time wage of $19.00 for all 85.49 hours worked, or $1,624.31 before deductions. This is a very clear, straight forward violation of the FLSA and Ohio law - instead of compensating Plaintiff at one and one-half times her regular hourly rates for hours more than forty (40) hours during the workweek, Defendants paid Plaintiff her regular, straight time hourly rates for overtime hours worked during this exemplar workweek. This clear violation is demonstrated by Defendant's own records.

87.     Although Defendants suffered and permitted Plaintiff and other members of the FLSA Collective and Ohio Class to work more than forty (40) hours per workweek, Defendants failed to pay Plaintiff and other members of the FLSA Collective overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek as a result of Defendants' straight time for overtime policies and practices.

88.     As a result, Plaintiff and other members of the FLSA Collective and Ohio Class were not properly paid overtime for many of their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq.*, and Ohio law.

89.     Defendants' failure to compensate Plaintiff and other members of the FLSA Collective and the Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay – as a result of Defendants' straight time pay for overtime hours worked policies and practices – constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio law.

### *Defendants' Unpaid Training Time and Other Off the Clock Violations*

29

90.     Instead of compensating Plaintiff and other members of the FLSA Collective and Ohio Class at one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek, during one or more workweeks, Defendants did not pay Plaintiff and other members of the FLSA Collective and Ohio Class for off the clock training and other off the clock tasks.

91.     For example, throughout her employment, Defendants required Plaintiff and, upon information and belief, other members of the FLSA Collective and Ohio Class, to watch training videos and respond to and participate in non-de minimis work-related phone calls and text message conversations. Plaintiff and other members of the FLSA Collective and Ohio Class were not compensated for this compensable time spent working.

92.     For example, in the beginning of her employment,[20] in approximately December 2021, Plaintiff Courtney Reagh was required to attend training videos from home for which she was not paid. Plaintiff Courtney Reagh also regularly, almost daily during her employment, was required to participate in phone calls, text messages, and other off the clock tasks.

93.     Participation in the training was not voluntary, and was job related. *See* 29 C.F.R. § 553.226. Responding to and participating in phone calls, text messages, and other off the clock tasks was also mandatory but not paid.

94.     Defendants' failure to compensate Plaintiff and other members of the FLSA Collective and Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay – as a result of Defendant's off the clock

---

[20] The law does not require Plaintiff to recall exact dates, exact hours, or exact amounts of wages received. Plaintiff's reasonable estimate of the dates and hours she worked, and the pay she received is sufficient based on her testimony alone. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946*).*

practices and policies – constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio law.

**Defendants' Unjust Enrichment**

95.     In addition, Defendants were unjustly enriched by the retention of promised hourly wages that were earned and that rightfully belong to Plaintiff and other members of the FLSA Collective and Ohio Class. Defendants were unjustly enriched in that they induced Plaintiff and other members of the FLSA Collective and Ohio Class to perform work for the benefit of Defendants and retained the benefit of this work without having paid for the same.

96.     For example, while Defendants represented to Plaintiff and other members of the FLSA Collective and Ohio Class that they would be paid at their hourly rates for all time spent working for Defendants, Defendants automatically deducted "breaks" when no breaks were taken, and edited time worked in the electronic timekeeping system to reflect less time worked for payroll and time payment purposes.

97.     Defendants arbitrarily and without prior notice modified Plaintiff's and other hourly employees' hours worked in the timekeeping system after the work was performed. At the end of the workday and/or workweek and after the work was performed, while operating under the understanding that they would be paid their hourly rates for all hours worked, Defendants arbitrarily and without prior notice deducted time worked from Plaintiff's and other members of the FLSA Collective's and Ohio Class's electronic time sheets. Plaintiff and other members of the FLSA Collective and Ohio Class were ultimately not paid for all time worked as a result of Defendants' time editing, docking or other time modification practices and policies.

98.     Although Plaintiff and other members of the FLSA Collective and Ohio Class satisfied the requirements of getting paid for all time worked – by virtue of working hours that

Defendants were required to pay at the agreed, promised hourly rate – Plaintiff and other members of the FLSA Collective and Ohio Class were not paid for all hours worked in full as they were entitled.

99.     Defendants were unjustly enriched from Plaintiff and members of the FLSA Collective by failing and/or refusing to pay earned wages in both overtime and non-overtime weeks.

100.    However, while Defendants knew that Plaintiff and other members of the FLSA Collective and Ohio Class worked for all the hours that were docked, deducted, and/or otherwise not paid by Defendants, Defendants nevertheless failed to pay for all hours worked as a result of Defendants' time deduction, off the clock, and other policies and practices resulting in less time paid than time actually worked.

101.    Defendants employ a policy or practice of failing and/or refusing to pay all earned hourly wages to employees. Defendants improperly and unlawfully retained hours worked and hourly wages rightfully earned and owed to Plaintiff and other members of the FLSA Collective and Ohio Class.

102.    Allowing Defendants to retain the benefits provided by Plaintiff and other members of the FLSA Collective and Ohio Class – free, unpaid labor – under the circumstances presented as outlined above, is demonstrably unjust.

103.    As a direct and proximate result of Defendants' unjust enrichment described herein, Plaintiff and other members of the FLSA Collective and Ohio Class have been damaged in an amount to be determined at trial, including but not limited to all time worked by Plaintiff and other members of the FLSA Collective and Ohio Class but not paid by Defendants.

**Defendants' Record Keeping Violations**

104.    The FLSA and Ohio law required Defendants to maintain accurate and complete records of employees' time worked and amounts paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2. Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

105.    Defendants failed to keep accurate records of hours worked of hourly employees, including Plaintiff and other members of the FLSA Collective and Ohio Class. Thus, Defendants did not record or pay all hours worked in violation of the FLSA and Ohio law.

**The Willfulness of Defendants' Violations**

106.    Defendants knew that Plaintiff and other members of the FLSA Collective and Ohio Class were entitled to overtime compensation pay under federal and state law or acted in reckless disregard for whether they were so entitled.

107.    Defendants' systematic policies as alleged in this Amended Complaint and applied in practice were done with Defendants' knowledge that the compensation policies and practices at issue were in violation of the overtime laws, or with a reckless disregard for whether

33

or not the policies and practices were in violation of these laws. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to overtime pay under Ohio and federal laws recited in this Amended Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required.

108.    In addition, O.R.C. § 4111.09 specifically provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the director of commerce, this conspicuously-placed posting includes the language: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week, except for employers grossing less than $150,000 per year."

109.    Defendants therefore knew about the overtime requirements of the FLSA and Ohio law or acted in reckless disregard for whether Plaintiff and other members of the FLSA Collective and Ohio Class were entitled to overtime compensation.

110.    The willfulness and intentional nature of Defendants' violations of federal overtime law is further demonstrated by Defendant's own records. For example, as noted above, on or about February 3, 2022, Defendant David Giesen and Defendant Giesen Management Associates issued a check to Plaintiff Courtney Reagh that was personally signed by Defendant David Giesen, as provided in the image below.

34



This February 3, 2022 paycheck, which was issued by "Giesen Management Associates Payroll"

and signed personally by Defendant David Giesen, paid Plaintiff (before deductions) for 85.49

hours at a straight time rate of $19.00 per hour, for a gross payment amount of $1,624.31. That

is, while Plaintiff worked a minimum of 5.49 overtime hours during this two-workweek period,

---

[21] Sensitive financial and tracking information has been redacted. The unredacted version can be provided to Defendants or the Court upon request.

Plaintiff Courtney Reagh was paid straight time for all hours worked during this two workweek pay period. This non-overtime paycheck was issued for the purpose of evading Defendants' obligations under the FLSA and Ohio law, and corroborates with Defendants' willful and intentional policy of failing to pay all overtime hours worked at time and one half as required by the FLSA and Ohio law.

111.    In addition, as noted above, and by way of example in paragraphs 24, 25, 56, 57, 71, and 72, Defendants regularly, intentionally and willfully deducted time worked or paid straight time for overtime hours. These time deductions were done for the purpose of evading Defendants' obligations under the FLSA and Ohio law, and corroborate with Defendants' willful and intentional policy of failing to pay all overtime hours worked at time and one half as required by the FLSA and Ohio law. Defendants intentionally shaved time on  a daily basis in an attempt to avoid paying overtime premium compensation in an attempt to reduce labor costs and, ultimately, increase Defendants' profits.

112.    Moreover, by denying Plaintiff and other members of the FLSA Collective and Ohio Class overtime compensation as required by the FLSA and Ohio law, Defendants' acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring overtime pay under Ohio and federal laws recited in this Amended Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the requirements of compliance as required.

113.    Plaintiff and other members of the FLSA Collective and Ohio Class are therefore entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. § 260.

114.    Defendants intentionally, knowingly, and willfully circumvented the requirements of the FLSA and Ohio law.

115.    The above payroll practices resulted in overtime violations of the FLSA, 29 U.S.C. §§ 201-219 and O.R.C. Chapter 4111, as well as the unlawful unjust enrichment of Defendants to the harm of Plaintiff and other members of the FLSA Collective and Ohio Class.

## COLLECTIVE ACTION ALLEGATIONS

116.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

117.    Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of [herself] or themselves and other employees similarly situated."

118.    The FLSA Collective consists of:

All current and former hourly employees of Defendants in Ohio from three years preceding the commencement of this action to the present who were not paid overtime compensation in the amount of one and one-half times the employee's regular rate of pay for all hours worked over forty (40) in any workweek as a result of Defendants' straight time for overtime, time editing, off the clock, and/or break deduction policies and/or practices.

119.    Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were non-exempt employees of Defendants, all were subjected to and injured by Defendants' unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty (40) per workweek, and all have the same claims against Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

120.    Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

121.    Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the FLSA Collective consists of over 200 persons. Such persons are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

## CLASS ACTION ALLEGATIONS

122.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

123.    Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons who assert claims under the overtime laws of the State of Ohio and assert claims pertaining to Defendants' unjust enrichment (the "Ohio Class"), defined as:

> All current and former hourly employees of Defendants from two years preceding the commencement of this action to the present who (1) were not paid overtime compensation in the amount of one and one-half times the employee's regular rate of pay for all hours worked over forty (40) in any workweek as a result of Defendants' straight time for overtime, time editing, off the clock, and/or break deduction policies and/or practices; and/or (2) were not paid their hourly rate for all hours worked in any workweek as a result of Defendants' time editing, off the clock, and/or break deduction policies and/or practices.

124.    The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of 200 or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants have maintained,

and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c); 29

C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

125.    There are questions of law or fact common to the Ohio Class, including but not

limited to:

> Whether Defendants' conduct as described above violates Ohio law governing
> payment of overtime compensation;
>
> Whether Defendants denied employees overtime compensation under Ohio law
> where, among other things, employees were not paid wages for their overtime
> hours worked;
>
> Whether Defendants denied employees compensable time where, among other
> things, employees were not paid wages for their hours worked and Defendants
> were unjustly enriched by the worked performed by their hourly employees; and
>
> What amount of monetary relief will compensate Plaintiff and other members of
> the Ohio Class for Defendants' violations of O.R.C. §§ 4111.03 and 4111.10, and
> Defendants' unjust enrichment.

126.    Plaintiff's claims are typical of the claims of other members of the Ohio Class.

Plaintiff's claims arise out of the same uniform course of conduct by Defendants, and are based

on the same legal theories, as the claims of other class members.

127.    Plaintiff will fairly and adequately protect the interests of the Ohio Class.

Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other

class members. Plaintiff's counsel have broad experience in handling class action litigation,

including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio

Class in this case.

128.    The questions of law or fact that are common to the Ohio Class predominate over

any questions affecting only individual members. The primary questions that will determine

Defendants' liability to the class, listed above, are common to the class as a whole, and

predominate over any questions affecting only individual class members.

129.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

130.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

131.    Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

132.    The FLSA requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

133.    Plaintiff and other members of the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

134.    Defendants did not pay overtime compensation to Plaintiff and other members of the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours.

135.    By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

136.    As a result of Defendants' violations of the FLSA, Plaintiff and other members of the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Plaintiff and other members of the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT TWO**
**(Ohio Overtime Violations)**

137.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

138.    Plaintiff brings this claim for violation of the Ohio overtime compensation statute, O.R.C. § 4111.03, on behalf of herself and other members of the FLSA Collective and Ohio Class.

139.    At all times relevant, Defendants were employers covered by the Ohio overtime compensation statute, O.R.C. § 4111.03.

140.    Defendants' failure to compensate overtime hours worked violated the Ohio overtime compensation requirements set forth in O.R.C. § 4111.03.

141.    These violations of Ohio law injured Plaintiff and other members of the FLSA Collective and Ohio Class in that they did not receive wages due to them pursuant to that statute.

142.    Having injured Plaintiff and other members of the FLSA Collective and the Ohio Class, Defendants are "liable to the employee[s] affected for the full amount of the overtime

wage rate, less any amount actually paid to the employee[s] and for costs and reasonable attorney's fees as may be allowed by the court" under Ohio law. O.R.C. § 4111.10.

### COUNT THREE
**(Unjust Enrichment)**

143.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

144.    As hereinabove alleged, the terms of compensation established by Defendants promised employees they would be paid wages for the hours they worked at the promised hourly rate, and all of the work Plaintiff and other members of the FLSA Collective and Ohio Class performed during their employments was performed under, and in return for, those terms of compensation. However, Plaintiff and other members of the FLSA Collective and Ohio Class were not paid the hourly rates they agreed to be paid for all hourly work completed but were instead paid less than agreed as a result of Defendants' time editing, off the clock and break deduction practices and/or policies.

145.    Plaintiff and other members of the FLSA Collective and Ohio Class have fully performed work that ultimately benefitted Defendants but were not paid for this work performed.

146.    Defendants have been unjustly enriched at the expense of Plaintiff and other members of the FLSA Collective and Ohio Class.

147.    Defendants have retained the benefit of Plaintiff's and other members of the FLSA Collective's services without compensating them as promised, under circumstances in which it would be unjust and unconscionable to permit Defendants to do so.

148.    Allowing Defendants to retain the benefits provided by Plaintiff and other members of the FLSA Collective and Ohio Class – free, unpaid labor – under the circumstances presented as outlined above, is demonstrably unjust.

42

149.    As a direct and proximate result of Defendants' unjust enrichment described herein, Plaintiff and other members of the FLSA Collective and Ohio Class have been damaged in an amount to be determined at trial, including but not limited to all time worked by Plaintiff and other members of the FLSA Collective and Ohio Class but not paid by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

A.    Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) as to the FLSA Collective and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C.    Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class;

D.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount;

E.    Award monetary relief to Plaintiff and other members of the FLSA Collective and Ohio Class in an amount sufficient to divest Defendants of the amounts gained by their unjust enrichment; and

F.    Award Plaintiff and other members of the FLSA Collective and Ohio Class compensatory damages, prejudgment interest, costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

Respectfully submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building

812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221 | F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*and*

*s/ Mark W. Biggerman*
Mark W. Biggerman (0064092)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526 {fax}
mark@mblegal.com

*Attorneys for Plaintiff*


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)