UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY REAGH, | ) | CASE NO. 5:22-cv-00266 |
| *On behalf of herself and all others similarly situated,* | ) ) ) | JUDGE SARA LIOI |
| Plaintiff, | ) ) | **JOINT MOTION FOR APPROVAL** |
| *v.* | ) ) | **OF SETTLEMENT PURSUANT TO** |
| | ) | **SECTION 216(b) OF THE FLSA** |
| GIESEN MANAGEMENT ASSOCIATES, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Agreement of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and Opt-In Plaintiffs (also collectively referred to as "Plaintiffs") that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-In Plaintiffs who submit a consent form pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), representing a substantial percentage – 200% *after the deduction of all costs and fees* – of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents[1] are respectfully submitted for approval or entry by the Court:

Exhibit 1:    *Agreement of Settlement and Release* ("Settlement Agreement");

Exhibit 2:    Proposed Final Order and Judgment Approving Settlement Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Dismissing Action;

Exhibit 3:    Exhibit A to Settlement Agreement –
Notice to Potential Opt-In Plaintiffs ("Notice");

Exhibit 4:    Exhibit B to Settlement Agreement –
Consent to Join Claim Form & Release ("Consent Form");

Exhibit 5:    Declaration of Plaintiff's Counsel Ryan A. Winters of SCOTT & WINTERS LAW FIRM, LLC; and

Exhibit 6:    Declaration of Plaintiff's Counsel Mark W. Biggerman.

The attached Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully Submitted,

*s/ Ryan A. Winters*                           *s/ John-Paul C. Sauer  (via email consent)*
Joseph F. Scott (0029780)              John-Paul Sauer (CO 4776102) (*PHV*)
Ryan A. Winters (0086917)             Karen H. Safran, (PHV)
**SCOTT & WINTERS LAW FIRM, LLC**     **GOODSPEED MERRILL**
P: (216) 912-2221    F: (440) 846-1625   9605 S. Kingston Ct, Ste 200
50 Public Square, Suite 1900            Englewood, Colorado 80112
Cleveland, OH 44113                     Telephone: 720-473-7644
jscott@ohiowagelawyers.com             Jsauer@goodspeedmerrill.com
rwinters@ohiowagelawyers.com           Ksafran@goodspeedmerrill.com

Kevin M. McDermott II (0090455)

                                        *Counsel for Defendants*

---

[1] In addition to the Exhibits attached to, and filed along with, this Motion, the parties are also separately filing, under seal, a 24-page PDF spreadsheet titled "Analysis of Unpaid 20 Min or Less Breaks from 2/16/2019-3/31/2023," which provides an analysis of the "Total Unpaid Minutes For Breaks  20 Min or Less" created by accounting firm Baker Tilly, which includes a breakdown, by employee, of anticipated settlement payments called for in the Settlement Agreement.

**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*s/ Mark W. Biggerman*
Mark W. Biggerman (0064092)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526 {fax}
mark@mblegal.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ v

Memorandum in Support ................................................................................................ 1

I.      The Litigation.......................................................................................................... 1

     A.      The Claims and Issues ................................................................................. 1

     B.      Discovery and Document Analysis............................................................. 4

II.     The Negotiations..................................................................................................... 5

III.    The Terms of the Settlement and Release of Claims .......................................... 7

     A.      The Scope of Settlement .............................................................................. 7

     B.      The Settlement Payments and Distributions ............................................. 7

     A.      The Sixth Circuit Standard is Satisfied .................................................... 10

     B.      The Settlement Payments are Fair, Reasonable, and Adequate............................ 15

     C.      The Service Awards to Plaintiffs Reagh and Tillotson are Proper and Reasonable 16

     D.      Plaintiff's Counsel's Fees and Expenses are Proper and Reasonable................... 17

V.      Conclusion ............................................................................................................ 24

Certificate of Service .................................................................................................... 25

Certificate of Compliance with Page Limitation Requirements ..................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343 (6th Cir.2000) .................................................. 18

*Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512
    (S.D. Ohio Nov. 5, 2020) ....................................................................................................... 23

*Bailey v. W.D. Wright Contracting, Inc.*, No. 1:20-cv-12, 2021 U.S. Dist. LEXIS 44355
    (S.D. Ohio Mar. 10, 2021) ..................................................................................................... 10

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d
    641 (1981) ............................................................................................................................... 10

*Berry v. Fun Time Pool & Spa, Inc*., No. 2:20-cv-1610, 2020 U.S. Dist. LEXIS 148836
    (S.D. Ohio Aug. 18, 2020) ...................................................................................................... 22

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................................ 18

*Bredbenner v. Liberty Travel, Inc.,* D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist.
    LEXIS 38663 (Apr. 8, 2011) .................................................................................................. 16

*Carter v. Hickory Healthcare, Inc*., 905 F.3d 963 (6th Cir. 2018) .................................................. 19

*Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714 (E.D. La. 2000) ...................................... 11

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS
    169237 (Oct. 4, 2017) ............................................................................................................ 11

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist.
    LEXIS 90070, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) .......................................... 11

*Dewey v. Volkswagen of Am*., 728 F.Supp.2d 546 (D.N.J.2010).................................................. 16

*Dillow v. Home Care Network, Inc.,* S.D.Ohio No. 1:16-cv-612, 2018 U.S. Dist. LEXIS
    170579 (Oct. 3, 2018) ............................................................................................................ 23

*Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.
    LEXIS 20446 (Mar. 8, 2010) ................................................................................................. 16

*Donnell Smith, et al. v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785 (E.D.
    Mich. May 31, 2022) .............................................................................................................. 15

*Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) . 16, 17

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ........................................................................... 18

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) .......................................................... 19

*Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS
30963 (Feb. 18, 2021) .............................................................................................. 22

*Fry v. Pilot Plastics, Inc.*, 2023 U.S. Dist. LEXIS 42938 (N.D. Ohio March 14, 2023); ...... 10, 11

*Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334 (Sep.
23, 2019) .................................................................................................................. 18

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir.2004) ......................................................................... 19

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS
67887, 2011 WL 2532922 (June 24, 2011) ............................................................ 11

*Gresky v. Checker Notions Co.*, No. 3:21-cv-01203, 2022 U.S. Dist. LEXIS 154506
(N.D. Ohio Aug. 26, 2022) ..................................................................................... 22

*Gunter v. Diamond Technical Services, Inc.*, No. 2:20-cv-01428 (W.D. Penn. May 6,
2022) ........................................................................................................................ 22

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) .......................................................................... 16

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................................... 13

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS
182622 (Oct. 22, 2019) ........................................................................................... 11

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ...................................... 13

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen.
Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................................... 11

*Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782
(N.D.Ohio Jan. 26, 2017) ....................................................................................... 11

*Johnson v. Centor, Inc.*, 2021 U.S. Dist. LEXIS 213003 (N.D. Ohio Nov. 4, 2021) .................. 10

*Landsberg v. Acton Ents.*, S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June
16, 2008) .................................................................................................................. 10

*Lowther v. AK Steel Corp.*, S.D.Ohio No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476
(Dec. 21, 2012) ....................................................................................................... 23

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................... 10

*McKnight v. Erico Int'l Corp.*, No. 1:21-cv-01826 (N.D. Ohio Feb. 8, 2023) ........................... 22

*Monroe v. FTS USA, LLC*, 17 F.4th 664 (6th Cir. 2021) ............................................................ 19

*Moore v. Freeman*, 355 F.3d 558 (6th Cir.2004) ........................................................ 18

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999) ........................................................ 15

*Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222
    (N.D.Ohio May 4, 2018) ....................................................................... 11, 16

*Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717 (Jan. 23, 2021) ....... 22

*Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288 (S.D.
    Ohio Nov. 28, 2017) ........................................................................... 22

*Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, 1985 WL
    13108 (6th Cir.1985) .......................................................................... 18

*Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S.
    Dist. LEXIS 39157 (S.D. Ohio Mar. 6, 2020) .................................................. 22

*Rapp v. Forest City Techs., Inc.,* No. 1:20-cv-02059 (N.D. Ohio Feb. 16, 2023) ...................... 22

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) ............................................................ 18

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613 (6th Cir.2021) ............... 18, 19

*Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018) ........ 23

*Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS
    58912, 2010 WL 2490989 (N.D. Ohio June 15, 2010), .............................................. 10, 15

*Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL,
    2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) .................................................. 16

*Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 833 Fed.
    Appx. 430, 2021 U.S. App. LEXIS 983 (6th Cir., Jan. 14, 2021) .................................. 15

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS
    35584 (Mar. 13, 2017) .................................................................... 11, 13, 14

*Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App.
    LEXIS 19634 (July 1, 2021) ................................................................... 19

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local*
    *307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ..................... 18

*Walls v. JP Morgan Chase Bank, N.A*., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist.
    LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ...................................................... 23

*Walton v. United Consumers Club*, 786 F.2d 303 (7th Cir. 1986). ............................................. 10

*Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084 (Aug. 1, 2022) ............................................................................................................ 22, 23

*Whittington v. Taco Bell of Am., Inc.*, D.Colo. Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665 (Nov. 13, 2013) ............................................. 16

*Yorba v. Barrington School, LLC*, S.D.Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230 (July 5, 2022) ........................................................................... 14, 15, 16

## Statutes

29 U.S.C. § 201 ................................................................................................................. 1

29 U.S.C. § 207 ................................................................................................................. 2

29 U.S.C. § 216 ........................................................................................................ passim

## Other Authorities

Newberg on Class Actions § 11:38 ................................................................................ 16

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      <u>THE LITIGATION</u>**

    **A.      The Claims and Issues**

Named Plaintiff Courtney Reagh filed Case No. 5:22-cv-00266 (the "Action") *on behalf of herself and all others similarly situated*, on January 16, 2022. (ECF #1.) On May 19, 2022, Named Plaintiff filed a First Amended Complaint seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Ohio law, including O.R.C. Chapter 4111 and common law unjust enrichment (ECF #13, referred to herein as the "Amended Complaint").

Defendants are alleged to be a Colorado-based company and its ownership engaged in the business of restaurant management group with Slim Chickens, Dunkin,' Arby's, and Freddy's Frozen Custard and Steakburgers brands. Plaintiff alleges that the Defendants employ workers, including Named Plaintiff and other members of the FLSA Collective, to provide these restaurant management services. Plaintiff's Amended Complaint alleged that Defendants Giesen Management Associates, LLC and David Giesen violated the FLSA and Ohio law by failing to pay overtime compensation to Named Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek, as well as failed to pay straight time wages for non-overtime hours worked. (*Id.* at ¶¶ 65-103.) Named Plaintiff alleges that Defendants shortchanged employees and avoided paying earned and owed wages through unlawful time manipulation/editing and break deduction practices and/or policies. (*Id.*) Named Plaintiff alleged that Plaintiff's and other similarly situated employees' time worked was manipulated and/or edited by upper management, including but not limited to as a result of improperly added breaks, resulting in less time paid than time worked.

1

(*Id.*) The Defendants strongly deny all elements of Plaintiff's claims, and Defendants asserted affirmative defenses, several of which are addressed below.

As set forth in Plaintiff's Amended Complaint (ECF #13 ¶¶ 75-84), Department of Labor regulations govern whether or not breaks of any length are compensable. The first category of unpaid breaks, breaks of 20 minutes or less, is governed by 29 C.F.R. § 785.18. That regulation states, in pertinent part:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.) (additional citation omitted).

Plaintiff's contention is that Defendants automatically deducted "breaks" from hourly employees' time worked despite the fact that Named Plaintiff and other members of the FLSA Collective regularly did not receive and/or take bona fide meal periods, and since workers were deducted time for breaks that were under 20 minutes, Plaintiffs argue that these breaks must be compensated. Plaintiffs argued that the FLSA, by virtue of Defendants' alleged break non-payment scheme, unlawfully enabled Defendants to avoid paying earned and owed overtime compensation to their workers at the rate of one and one-half times their regular rate for the hours they worked in excess of forty (40), 29 U.S.C. § 207, as well as failed to pay straight time wages for non-overtime hours worked.

Defendants assert that no breaks were improperly added and, to the extent they were, during the vast majority of workweeks the hourly workers worked part time – less than forty (40) hours – and that therefore the overtime compensation provisions of the FLSA do not apply. Defendants also maintain that they were not joint employers of Named Plaintiff and other *potential* members of the FLSA Collective such that Plaintiffs are not permitted to maintain a

collective action as to every business location, because they operate as different franchise establishments, including Slim Chickens, Dunkin,' Arby's, and Freddy's Frozen Custard and Steakburgers brands, in different states. Among other factors, Defendants argue there is no interrelation of operations, no common management, and no centralized control over labor relations as to each restaurant location. Defendants filed a motion to dismiss on this point (ECF #8). Defendants also maintain that any allegation that individual Defendant David Giesen is an employer of Plaintiffs is an improper extrapolation, and that there is little, if any evidence that he exercised daily operational control over Giesen Management including, but not limited to, making decisions over the hiring and firing of employees, scheduling employees for work, establishing payroll policies, practices and procedures, establishing rates of pay for employees, and issuing payroll to employees and that Plaintiff cannot prove that David Giesen instituted or applied any corporate policies at issue in the case. Therefore, Defendants argue, Plaintiff will not succeed on a theory of joint employment. In response, Plaintiffs argue  that all Defendants are joint employers and each Defendant, by virtue of fitting the definition of an "employer" under the FLSA, was required, but ultimately failed, to pay wages required by law.

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the FLSA overtime claims should proceed on a nationwide collective basis under 29 U.S.C. § 216(b); (2) prove that each worker performed unpaid overtime hours each workweek, in addition to the amounts of these times, and defeat Defendants' argument that the times and amounts of unpaid break overtime hours Plaintiff allege, both with regard to frequency and duration, are an exaggeration that cannot be supported with admissible evidence; (3) defeat Defendants' argument that they are not joint employers of Named Plaintiff and other workers; and (4) defeat

3

Defendants' legal and factual arguments that any violation was not willful and that Defendants are entitled to a good faith defense.

### B.     Discovery and Document Analysis

The Parties engaged in extensive discovery, and Defendants produced voluminous wage-and-hour data and documents necessary to enable the Plaintiff to fully and fairly evaluate her claims. Prior to engaging in settlement negotiations, Defendants provided Plaintiff with payroll and timekeeping records comprised of millions of data points for Defendant's Ohio employees. Plaintiff's Counsel electronically transcribed the relevant data into an aggregate format capable of computation and analysis. Prior to mediation, Plaintiff's work-product computation considered approximately 2,122,000 data points and permitted a calculation of the unpaid wages for all Ohio employees.[2] Plaintiff's Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Prior to the initial February 8, 2023 mediation, **Plaintiff's Counsel's Ohio employee calculated unpaid back wage damages for breaks of 20 minutes or less – despite the relatively large size of the FLSA purported collective – were $10,608.79 during the entire period at issue** (including during both overtime and non-overtime weeks). This relatively small damages amount appeared to be the case for several reasons. First, a significant percentage – more than 80% – of workweeks were non-overtime workweeks; the vast majority of Defendants'

---

[2] The size of and complications in the data production required Plaintiff's Counsel to dedicate significant time to complete the analysis of damages for the Plaintiff.

workers are part-time fast-food workers. Second, many workers' employments were relatively short which may be attributable to several reasons including due to labor challenges as a result of the COVID-19 pandemic. Third, although the records clearly demonstrate many examples of – what Plaintiff contends are unlawfully added breaks – such additions were very sporadic and the records demonstrate that many affected workers damages are owed $5.00 or less during the entire statutory period. And forth, the overwhelming majority of affected workers were paid slightly above minimum wage, rendering any potential improperly added time deductions significantly small – *i.e.* a 15-minute deduction for an employee paid $12.00 per hour results in $3.00 in damages.

Plaintiff's damages calculations were confirmed by a third-party accounting/auditing process employed by Defendants in advance of the February 8, 2023 mediation. Prior to the mediation, Defendants engaged public accounting and consulting firm Baker Tilly[3] to perform an audit and determine potential damages computations for potential settlement. **Based on Baker Tilly's analysis of the Ohio locations, Defendants' maximum exposure for breaks under 20 minutes – again despite the relatively large size of the FLSA purported collective – was a total of $10,763.00.** Baker Tilly's analysis further concluded that the vast majority of days with allegedly improperly added breaks (71%) were days in which employees worked 7 hours or less.

Baker Tilly ultimately performed a review and analysis for all Ohio and Colorado locations covered by this settlement. Based on this analysis, the unpaid breaks total $24,084.02.

II.    **THE NEGOTIATIONS**

As noted above, prior to engaging in settlement negotiations, Plaintiff's Counsel, Defendants, as well as third-party accounting and consulting firm Baker Tilly, conducted

---

[3] https://www.bakertilly.com/ (last accessed August 22, 2023);
https://en.wikipedia.org/wiki/Baker_Tilly_US,_LLP (last accessed August 22, 2023).

comprehensive investigations, including an extensive analysis of the wage-and-hour information and data and documents. Mediation commenced February 8, 2023 before highly respected mediator Jerome F. Weiss.[4] Despite the Parties' best efforts, this mediation was unsuccessful, as the Parties were still at an impasse at the end of the mediation. Over the next several months, the Parties continued their negotiations, and additional documents were exchanged pertaining to alleged additional deductions as a result of allegedly improper time editing. On May 5, 2023, the Parties filed a Notice of Settlement (ECF #29), providing notice to this Court that "they have come to an agreement in principle as to the material terms of an FLSA Collective settlement of the above-captioned case." Finally, and as the Court is aware because of the Parties' requests for extensions in connection with this settlement, final negotiations ultimately proved to be extremely arduous due to the extensive calculations requiring to be completed.

Importantly, the attorneys' fees to Plaintiff's Counsel were demanded, negotiated, and ultimately agreed to by Defendants in a separate amount from the payments to be made by Defendants to Named Plaintiff and Opt-Ins as recovery of back wages and liquidated damages, as well as the service awards to Plaintiffs Reagh and Tillotson. The Parties' negotiations ultimately resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiff's Counsel, are supported by the Declaration of Plaintiff's Counsel. (*See* Exs. 5, 6.) Formal settlement documents, including the *Agreement of Settlement and Release* attached as Exhibit 1, were later prepared and executed for approval by the Court.

---

[4] https://www2.mediate.com/mediationinc/index.cfm (last accessed August 22, 2023).

### III.  THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

#### A.  The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve deeply disputed claims between the Parties. The Settlement will resolve wage-and-hour claims of the Named Plaintiff and all other Opt-In Plaintiffs who affirmatively agree to be bound by the Settlement by signing and returning the Consent Form attached as Exhibit B to the Settlement Agreement. As highlighted below, Plaintiff's Counsel and Defendants' Counsel believe that settlement is appropriate because the "Released Claims"[5] are being compromised without the need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Plaintiffs in light of the procedural and substantive encumbrances underscored by Defendants. Named Plaintiff and Plaintiff's Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. (*See* Exs. 1, 5-6.) Named Plaintiff and Plaintiff's Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this Action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*See id.*)

#### B.  The Settlement Payments and Distributions

**Total Settlement Amount.** Defendants have agreed to pay the maximum settlement amount of $102,423.70 as set forth in the Settlement Agreement. (Ex. 1 ¶ 3.) That sum will be used to make settlement payments to the Named Plaintiff and other Opt-In Plaintiffs who submit

---

[5] Defined in the Settlement Agreement (Ex. 1 at p. 5) as "all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, asserted or unasserted, whether anticipated or unanticipated, and asserted in or related to the facts alleged in the Action against the Released Parties, including, but not limited to, all such claims seeking unpaid wages under the FLSA, 29 U.S.C. §§ 201, *et seq.,* or any other federal, state, or local statute, regulation, ordinance, or common law legal theory for overtime, other wages, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief."

a consent form pursuant to the FLSA, 29 U.S.C. § 216(b), which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) service awards; and (4) any other obligations of Defendants under the Settlement Agreement.

**Payments to Opt-In Plaintiffs.** From the total settlement amount, the maximum amount of $42,423.70 will be paid to the Opt-In Plaintiffs, including the Named Plaintiff who previously submitted a consent form pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed method of allocating the payments is reasonable and fair to all. Payments to Opt-In Plaintiffs are based on a minimum payment of (a) $15.00 *or* (b) the total number of minutes worked by the Opt-In Plaintiff of Short Breaks multiplied by 2, divided by 60, multiplied by $10.10 and rounded to the nearest cent. Pursuant to the Settlement Agreement, in the event the total sum of all Opt-In Plaintiffs' Settlement Shares exceeds the Opt-In Plaintiff Settlement Fund amount (which is unlikely), payments to Opt-In Plaintiffs will be determined by the total number of Short Break minutes worked by the Opt-In Plaintiff divided by the total number of the Short Break minutes worked by all Opt-In Plaintiffs multiplied by the Settlement Fund amount and rounded to the nearest cent. (Ex. 1 at p. 6 (defining "Settlement Share" and "Short Breaks").)  If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage – essentially 200% – of the potential value of their claims, and achieves an excellent result for the covered employees. Inherent in the proposed distribution method in which Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiff's actual damages during the relevant period, the settlement proposal treats Opt-In Plaintiffs equitably relative to each other. Plaintiffs Reagh and Tillotson, as Opt-In Plaintiffs, will participate in the recovery under the same procedure

8

applicable to other Plaintiffs.

**Service Awards.** The proposed Settlement provides for individual service awards to Plaintiff Reagh in the amount of $3,000, and $1,000 to Plaintiff Tillotson, in recognition of these individuals' assistance to Plaintiff's Counsel and their contributions to achieving the Settlement on behalf of all Opt-Ins. The proposed service awards are well-earned. Among other things, Plaintiffs consulted with Plaintiff's Counsel at critical stages and provided important and necessary documents and information throughout the course of the litigation. Plaintiffs Reagh's and Tillotson's contributions were instrumental in enabling Plaintiff's Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiff's Counsel will receive attorneys' fees and costs in the total amount of $56,000.00. After reductions for costs and litigation expenses in the total amount of $4,038.95, the attorney fee recovery will equal $51,961.05. (*See* Ex. 1 ¶ 9; Ex. 5, Decl. of R. Winters ¶ 42.)  **Importantly, the attorneys' fees to Plaintiff's Counsel were demanded and negotiated separately from the payments made by Defendants to Named Plaintiff and Opt-Ins.** The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiff's Counsel. (*See generally id.*; Ex. 6, Declaration of Mark Biggerman.) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiff's Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and Opt-In Plaintiffs. (*See* Ex. 1 ¶¶ 8-10.) As further explained below, the payment to counsel is reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

IV.     **THE PROPRIETY OF APPROVAL**

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Johnson v. Centor, Inc.,* 2021 U.S. Dist. LEXIS 213003, *4 (N.D. Ohio Nov. 4, 2021); *Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club,* 786 F.2d 303, 306 (7th Cir. 1986). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *See Fry v. Pilot Plastics, Inc.,* 2023 U.S. Dist. LEXIS 42938, *3-4 (N.D. Ohio March 14, 2023); *Bailey v. W.D. Wright Contracting, Inc.,* No. 1:20-cv-12, 2021 U.S. Dist. LEXIS 44355, at *3-4 (S.D. Ohio Mar. 10, 2021).

A.      **The Sixth Circuit Standard is Satisfied**

This Settlement qualifies for court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., S.D.Ohio* No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Fry,* 2023 U.S. Dist. LEXIS 42938, *3-4 ("the district court must 'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'") (quoting *Rotuna v. W. Customer Mgmt. Grp. LLC,* No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010), quoting *Collins v. Sanderson Farms, Inc.,* 568 F.

Supp. 2d 714, 719 (E.D. La. 2000) (further citation omitted)); *Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

In *Fry,* 2023 U.S. Dist. LEXIS 42938, *3-4, this Court recently used several factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. § 216(b):

> the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; and, the public interest in settlement.

(Citing *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008), citing *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement.") "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each worker's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers performed overtime hours each workweek, in addition to the amounts of these times. Defendants argued that the times and amounts of overtime hours Plaintiff alleges, both with regard to frequency and duration, are an exaggeration that cannot be supported with admissible evidence; that Defendants' likelihood of success in defending against claims alleging that Plaintiffs were jointly employed by Defendants at all locations to be high; that members of the FLSA Collective were properly paid for all hours worked; and that the alleged unpaid wages were not compensable because Plaintiffs actually were not working during the alleged break time deducted periods. Defendants further aggressively argued that, even if Plaintiffs prevail on the substantive elements of their claims, any violation was not willful and that Defendants are entitled to a good faith defense. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. Nevertheless, the Settlement assures that the Plaintiffs will receive significant compensation; the settlement payments equate to 200% of the potential damages owed – after all attorneys' fees and service awards are paid – equal to 100% of the unpaid overtime wages plus 100% of the liquidated damages recoverable pursuant to the FLSA, 29 U.S.C. § 216(b).

The Settlement assures that the Plaintiffs will receive significant compensation. Given the **exceptional recovery** in this case and uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement

"ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Given that the factual and legal issues in this case are highly disputed and complex, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that Plaintiffs will receive significant compensation. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to Plaintiffs to this action.

The other factors are satisfied as well. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is categorically no fraud or collusion – the settlement was achieved only after good faith and arm's-length negotiations between Parties represented by competent counsel, including an initially attempted but unsuccessful mediation before highly respected mediator Jerome F. Weiss. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *5.

The Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers approximately 2,122,000 data points and permits a calculation of the alleged unpaid wages for all covered workers based off a statistically significant sample of the timekeeping and payroll records produced by Defendants. Plaintiff's Counsel electronically transcribed hundreds of thousands of wage and hour records – the necessary payroll and timekeeping information for the required damages analysis – into an aggregate format to extensively assess the strengths and weaknesses of the case and determine computations of the claimed damages. Prior to the mediation, and after settlement for the purpose of reviewing

millions of records to determine damages allocations, Defendants engaged public accounting and consulting firm Baker Tilly to perform an audit and computation to determine damages computations – the third-party accounting firm's initial damages computations closely correlated with Plaintiff's calculations at mediation. Plaintiff's Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Moreover, again as noted above, to the extent they decide to opt-into the matter, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage – 200% – of the potential value of their claims, and achieves an excellent result for the covered employees. Inherent in the proposed distribution method in which Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiff's actual damages during the relevant period, the settlement proposal treats Opt-In Plaintiffs equitably relative to each other.

Moreover, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Settlement assures that the Plaintiffs will receive significant compensation. Counsel on both sides support the Settlement, as do the Representative Plaintiffs themselves. (*See* Exs. 1, 5-6.) In sum, the six-factor standard is satisfied, supporting that the settlement is "a fair and reasonable resolution of a bona fide dispute." *Yorba v. Barrington School, LLC*, S.D.Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230, at *7 (July 5, 2022).

14

**B.      The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *6, citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Named Plaintiff and Opt-Ins represent 200% of the potential damages owed – *after* attorneys' fees and service award to the Named Plaintiff are deducted – or equal to 100% of the calculated unpaid overtime wages plus 100% of liquidated damages recoverable pursuant to the FLSA, 29 U.S.C. § 216(b), and the ***allocations are based on the actual damages*** of the Plaintiffs. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the damages methodology that Named Plaintiff and Opt-Ins will present at trial. The settlement achieves an exceptional result for the covered workers, again, 200% of the damages for each individual who consents to be bound to the settlement after attorneys' fees, costs, and the service award are deducted. *See Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *see Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 833 Fed. Appx. 430, 2021 U.S. App. LEXIS 983 (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class); citing *see also Donnell Smith, et al. v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (approving FLSA settlement providing payments of approximately 115% of plaintiffs' possible damages and noting the amount "greatly exceeds the typical 7-11% recovery in FLSA cases.")). There is no doubt that the payments to Plaintiffs are an exceptional recovery and meet the criteria for approval pursuant to the FLSA, § 216(b), and Sixth Circuit Authority.

### C. The Service Awards to Plaintiffs Reagh and Tillotson are Proper and Reasonable

A reasonable service award properly recognizes a leading plaintiff's services on behalf of other beneficiaries of the settlement and their contributions to achieving a positive outcome. *See In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990). Another district court recently noted that such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019), quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards "are not uncommon, and courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred…" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (internal citation and quotation marks omitted); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff, along with $500 service awards for ten opt-in plaintiffs) (citing *Whittington v. Taco Bell of Am., Inc.*, D.Colo. Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *24 (Nov. 13, 2013) (approving service payment for the named plaintiff of $7,500); *Bredbenner v. Liberty Travel, Inc.,* D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at *68 (Apr. 8, 2011) ($10,000 each for the 8 named plaintiffs); *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 610 (D.N.J.2010) ($10,000); *see also* Newberg on Class Actions § 11:38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000)).

16

Indeed, Plaintiffs Reagh and Tillotson incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Reagh consented and agreed to serve as Representative Plaintiff of Defendants' Ohio employees, and Plaintiff Tillotson consented and agreed to serve as Representative Plaintiff of Defendants' Colorado employees. Plaintiffs Reagh and Tillotson consulted with Plaintiff's Counsel at critical stages; helped counsel review and respond to the documents provided by Defendants and Plaintiff Reagh attended the mediation on behalf of herself and members of the FLSA collective; and Plaintiffs provided and/or reviewed other important documents and information throughout the course of the litigation. Their contributions were instrumental in enabling Plaintiff's Counsel to negotiate the final proposed Settlement. Furthermore, Plaintiffs Reagh and Tillotson proactively and faithfully represented the interests of all Opt-Ins and ably assisted Plaintiff's Counsel in this matter. Their contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service awards of $3,000 and $1,000, respectively to Plaintiffs Reagh and Tillotson, are reasonable and well-earned. Defendants have no objection to this award.

### D. Plaintiff's Counsel's Fees and Expenses are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875

(1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)).

The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6, 1985 WL 13108, at * 2 (6th Cir.1985)). *Accord, Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 (May 30, 2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). In the Sixth Circuit, "[i]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id.* (quoting *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021), the Sixth Circuit addressed a situation where the court "capped the awardable fees at some percentage of [the plaintiff's claims'] monetary value." The Court ultimately ordered attorney fees to be calculated based on the lodestar attorneys' fees incurred, noting:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the

18

cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id.* at 616-617 (quoting *Fisher v. SD Protection Inc*., 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC,* 17 F.4th 664, 672-73 (6th Cir. 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc*., 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021) (district court abused its discretion by reducing the parties' agreed-to fees payment calculated under the lodestar method to one-third of the total settlement amount).

Here, the proposed payment to Plaintiff's Counsel – again, separately demanded and negotiated from the payments to Named Plaintiff and Opt-Ins – represents a reduction from the total fees and costs expended in the prosecution of the Action. The efforts of Plaintiff's Counsel resulted in proposed settlement payments to the Named Plaintiff and Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims - 200% of the wage damages calculated for the participating Named Plaintiff and Opt-In Plaintiffs. The attorneys' fees, and the settlement as a whole, are supported by the Declarations of Plaintiff's Counsel Ryan A. Winters (of Scott & Winters Law Firm, LLC) and Mark W. Biggerman, attached as Exhibits 5 and 6, respectively.

As provided in the time records attached to the declarations of Plaintiff's Counsel, and briefly summarized here, the activities of Plaintiff's Counsel in this matter were significant. Prosecuting complex litigation on a collective class basis is always difficult and time-consuming.

The tasks required of Plaintiff's Counsel in this case included pre-litigation investigation of Plaintiffs' claims and the identities of potential defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as investigation and interviewing of current and former employees of Defendants and putative opt-in class members. On April 8, 2022, Defendants moved to dismiss the matter pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #8.) Plaintiff filed a First Amended Complaint (ECF #13) in response to this motion.

Plaintiff's Counsel drafted and issued Plaintiff's Omnibus First Set of Discovery Requests to Defendant. Defendants ultimately produced spreadsheets containing timekeeping and payroll data comprised of millions of data points. Plaintiffs' Counsel electronically transcribed the relevant data into an aggregate format capable of computation and analysis, which required significant time. Plaintiffs' work-product computation considered approximately 2,122,000 data points and permitted a calculation of the unpaid wages for the Plaintiffs based off the timekeeping and payroll records provided by Defendants. These documents and data were extensively analyzed by Plaintiff's Counsel for damages, settlement evaluation and mediation purposes. The analyses, investigation and discovery were time-consuming, but proved instrumental to the negotiation of the proposed Settlement. Moreover, and as the Court is aware of as a result of the Parties' requests for extension in connection with this settlement, final negotiations ultimately proved highly contentious, arduous, and time consuming due to the extensive calculations requiring to be completed.

Plaintiff's Counsel conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation included, among other things, (a) multiple meetings and conferences with the Court, Plaintiff, and Defendants' Counsel; (b) inspection and analysis of a statistically significant percentage of the collective-wide payroll

documents produced by the Defendants including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising of over 2,122,000 data points from the records produced by Defendants; (c) analysis of the legal positions taken by Defendants; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class/collective-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto. (*Id.*)

Moreover, Plaintiff's Counsel's lodestar, further discussed below, has not been adjusted to account for the time Plaintiff's Counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, continuing to respond to questions and inquiries from Named Plaintiff and the hourly employees of Defendants who join, or are entitled to join, this matter as Opt-In Plaintiffs, and continuing representation of Named Plaintiff and Opt-In Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. Plaintiff's Counsel have extensive experience in these matters, and are well familiar with the additional tasks that Counsel will dutifully complete through this matter's conclusion. The timeline for settlement administration established by the parties' agreement will require the settlement administration to last a minimum of six months after the final approval order is entered. Once final approval is entered, and settlement checks are sent to all Opt-In Plaintiffs, Plaintiff's Counsel will likely receive telephone calls, text messages and emails from Opt-In Plaintiffs regarding the case. Settlement participants routinely contact Counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation methodology for their individual awards, and the anticipated timeline for receiving a payment, even after the entering of final approval. The demands on Plaintiff's Counsel in completing its obligations, as well as overseeing administration of an opt-in settlement of this size, is of no

small undertaking. Plaintiff's Counsel's lodestar also does not include the additional attorney

hours counsel collectively has and will spend preparing, reviewing changes by defense counsel,

and finalizing the briefing of this motion and related exhibits up to and until the filing of this

motion (between August 22, 2023 (Plaintiff's Counsel's declaration date) and the date of this

filing), and any other work completed after August 22, 2023.

    As of August 22, 2023, Plaintiff's Counsel had a collective 259.4 hours in this case – a

fee lodestar of $106,940.00. Specifically, Joseph F. Scott had 21.5 hours at $500 per hour; Ryan

A. Winters had 37.7 hours at $425 per hour; Kevin M. McDermott II had 196.7 hours at $400 per

hour[6] (Ex. 5, Decl. of R. Winters at ¶ 41), and Mark W. Biggerman had 3.5 hours at $425.00 per

---

[6] Scott & Winters Law Firm's requested hourly rates were specifically found as reasonable in *Gunter v. Diamond Technical Services, Inc.*, No. 2:20-cv-01428, ECF #43 (W.D. Penn. May 6, 2022) (Stickman, J.). In *Gunter*, noting that "[t]he Court [] finds that Class Counsel's attorney hours and hourly rates are reasonable," *id.*, the court approved Joseph F. Scott's reasonable requested hourly rate of $550; Attorney Ryan A. Winters' reasonable requested hourly rate of $425; and Attorney Kevin M. McDermott II's requested reasonable hourly rate of $385, *see Gunter* Decl. of Class Counsel, ECF #41-3 at 5, ¶ 9. Even more recently, Scott's, Winters's and McDermott's requested rates of $500, $425, and $400, respectively, were reviewed and not objected to in the context of complex FLSA class/collective action settlements. *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-02059, ECF ##90-4 ¶ 10 (Declaration of Counsel, requesting hourly rates of $500, $425, and $400, for Scott, Winters, and McDermott, respectively), 91 (Order Granting Final Approval) (N.D. Ohio Feb. 16, 2023); *McKnight v. Erico Int'l Corp.*, No. 1:21-cv-01826, ECF ##45-4 ¶ 10 (Declaration of Counsel, requesting hourly rates of $500, $425, and $400, for Scott, Winters, and McDermott, respectively), 47 (Order Granting Final Approval, noting that "Ryan A. Winters, Joseph S. Scott, and Kevin McDermott, II—have "extensive experience in complex civil wage litigation") (citation omitted) (N.D. Ohio Feb. 8, 2023). *See also Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963, at *13 (Feb. 18, 2021) (approving hourly rates in wage and hour litigation ranging from $350 to $500); *Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, at *13-14 (Aug. 1, 2022) (approving $600 to $350 hourly rates in wage and hour case); *Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717, at *12 (Jan. 23, 2021) (noting that "[c]ourts within the Sixth Circuit have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions…") (citing *see also Berry v. Fun Time Pool & Spa, Inc.*, No. 2:20-cv-1610, 2020 U.S. Dist. LEXIS 148836, 2020 WL 4784654, at *2 (S.D. Ohio Aug. 18, 2020) ($445); *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S. Dist. LEXIS 39157, 2020 WL 1080418, at *2 (S.D. Ohio Mar. 6, 2020) ($350); *Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288, 2017 WL 5900559, at *4 (S.D. Ohio Nov. 28, 2017) ($450) (additional citations omitted)); *Gresky v. Checker Notions Co*., No. 3:21-cv-01203, 2022 U.S. Dist. LEXIS 154506, at *21-29 (N.D. Ohio Aug. 26, 2022) (approving as reasonable a $400 rate for attorney who was admitted and started practicing wage and hour law in November, 2013 (similar to

hour (Ex. 6, Decl. of M. Biggerman at ¶ 6). At a combined fee lodestar of $106,940.00 (as of August 22, 2023), the requested attorney fee of $51,961.05 ($56,000.00 combined fees and costs award minus $4,038.95 in costs incurred by Plaintiff's Counsel) results in a significant "negative multiplier" of .49, if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 5 at ¶ 42.) Such a negative multiplier eminently supports that the fee sought is reasonable, *see, e.g, Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)), and given that Plaintiff's Counsel's lodestar is on the very low end of the acceptable range, a lodestar review of the attorneys' fees to be paid to Plaintiff's Counsel eminently supports the reasonableness of the fee request. *See, e.g., Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, at *13 (Aug. 1, 2022) (approving 3.79 multiplier in FLSA case) (citing *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *19 (S.D. Ohio Nov. 5, 2020) (approving a multiplier of 5.29)); *Swigart v. Fifth Third Bank,* S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *17-18 (July 11, 2014) (approving 2.57 multiplier); *Dillow v. Home Care Network, Inc.,* S.D.Ohio No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17-18 (Oct. 3, 2018) (approving 2.9 multiplier); *Lowther v. AK Steel Corp.*, S.D.Ohio No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *17-19 (Dec. 21, 2012) (approving 3.06 multiplier and noting ranges from 4.3 to 8.74 have been found to be reasonable); *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *18 ("courts frequently approve attorney's fee awards equaling two to three times the lodestar amount...").

---

Attorney McDermott), as well as a $450 rate for attorney who was admitted to practice in 2009 (similar to Attorney Winters (admitted 2010), whose current rate is $425)).

The resulting settlement negotiated by Plaintiff's Counsel ensures substantial payments to the Named Plaintiff and Opt-In Plaintiffs – 200% of their calculated wage damages as outlined above – again, after all fees, costs, and service awards are deducted. In other words, **Named Plaintiff and Opt-In Plaintiffs will recover approximately 200% of their calculated wage damages, and Plaintiff's Counsel will recover approximately 49% of their lodestar attorney fees incurred as of August 22, 2023.** Moreover, Plaintiff's Counsel's lodestar has not been adjusted to account for the time Plaintiff's Counsel spent after August 22, 2023 finalizing this motion for approval and final negotiations of the Settlement Agreement, as well as additional time counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the collective action members, and continuing representation of Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

In addition, the settlement payment as to attorney fees includes all costs incurred by Plaintiff's Counsel, including the $4,038.95 in reimbursable out-of-pocket expenses incurred in this case by Plaintiff's Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 1 ¶ 9; Ex. 5 ¶ 45.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiff's Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.    <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

_s/ Ryan A. Winters_____

Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

_s/ Mark W. Biggerman_____

Mark W. Biggerman (0064092)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526 {fax}
mark@mblegal.com

*Attorneys for Plaintiff*

_s/ John-Paul C. Sauer  (via email consent)_

John-Paul Sauer (CO 4776102) (*PHV*)
Karen H. Safran, (PHV)
**GOODSPEED MERRILL**
9605 S. Kingston Ct, Ste 200
Englewood, Colorado 80112
Telephone: 720-473-7644
Jsauer@goodspeedmerrill.com
Ksafran@goodspeedmerrill.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties

indicated on the electronic filing receipt.

_s/ Ryan A. Winters_____

Ryan A. Winters (0086917)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned counsel, state that this matter has been assigned to the standard track, and I hereby certify that the memorandum contained herein complies with the page limitations established by the Court's Order dated August 24, 2023.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)
